IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) 2:22-cr-84-NR-2 |
| | ) |
| TYLER SMITH, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

Defendant Tyler Smith faces a 12-count indictment stemming from allegations that he physically abused over a dozen people with severe physical, intellectual, and emotional disabilities while working at a residential medical facility. The first eleven counts of the indictment allege violations of or conspiracy to violate the Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act, 18 U.S.C. § 249. Mr. Smith now moves to dismiss those counts because he believes that, as applied to him, Congress exceeded its authority to regulate his conduct under the HCPA. That is, according to Mr. Smith, none of his alleged conduct in the indictment "substantially affected" interstate commerce and thus there is no federal subject matter jurisdiction for his prosecution. Mr. Smith's argument misses the mark, however, because the statute contains a jurisdictional element, which, if satisfied, ensures that the necessary nexus to interstate commerce is established. And taking the allegations in the indictment as true, as the Court must, the government has set forth sufficient facts to satisfy that element as to each of his challenged counts. The statute is therefore constitutional as applied to Mr. Smith.

Mr. Smith also challenges whether the Attorney General properly certified that his federal prosecution "is in the public interest and necessary to secure substantial justice." Such certification is a necessary precondition to prosecution under the HCPA. Mr. Smith claims that there are substantive and procedural problems with this certification. But his challenges fail because the Court cannot

engage in a substantive review of the certification decision, and the certification itself meets the procedural requirements to be valid.

For these reasons, elaborated below, the Court denies Mr. Smith's motion to dismiss the indictment.

## **BACKGROUND**

As alleged in the indictment, in May 2015, Mr. Smith began working at McGuire Memorial, a 24-hour residential medical facility that provides in-patient care to people with severe physical, intellectual, and emotional disabilities. ECF 3, ¶¶ 1-2, 4. About a year later, Zachary Dinell joined Mr. Smith on McGuire Memorial's staff. *Id.* ¶ 5.

Due to their disabilities, the residents of McGuire Memorial needed assistance with all aspects of daily life, including bathing, dressing, feeding, oral hygiene, toileting, positioning, and reporting signs of illness. *Id.* ¶ 6. Many residents were non-verbal; some used wheelchairs. *Id.* ¶¶ 9, 14-15.

Messrs. Smith and Dinell exchanged many text messages during their time working together, often expressing their shared animus towards the residents of McGuire Memorial that were in their care. *Id.* ¶ 18. This animus eventually evolved into physical abuse, and over several months from 2016 to 2017, Messrs. Smith and Dinell used their phones to catalogue the abuse they had inflicted or intended to inflict on residents. *Id.* ¶ 16-18. They shared with each other photos and videos documenting the abuse. *Id.* They would also sometimes share words of encouragement with one another in text messages about the abuse. *Id.* ¶ 20.

The abuse took many forms, including punching or hitting residents, kicking residents, jumping on residents, rubbing irritants into the eyes of residents, and spraying cold water on a naked and medically sensitive resident. *Id.* ¶ 12. In carrying

out this abuse, Messrs. Smith and Dinell used commonly available items, like hand sanitizer, mouthwash, and a shoe, as weapons to inflict pain. *Id.*[1]

For this conduct, a grand jury indicted Mr. Smith on twelve charges: one count of conspiracy to commit hate crimes, in violation of 18 U.S.C. § 371; ten counts of hate crimes, in violation of 18 U.S.C. § 249(a)(2)(A); and one count alleging a scheme to conceal material facts in connection with a health care matter, in violation of 18 U.S.C. § 1035(a)(1). *Id.* Mr. Smith has now moved to dismiss Counts 1 through 11 of the indictment. ECF 106. He does not challenge Count 12.

## DISCUSSION & ANALYSIS

### I. The HCPA is constitutional as applied to Mr. Smith.

Mr. Smith argues that Section 249(a)(2) is unconstitutional as applied to him because the jurisdictional basis for Mr. Smith's charge exceeds Congress's authority under the Commerce Clause. ECF 106, pp. 2-13. He argues that the statute impermissibly regulates a non-economic activity that does not have a substantial effect on interstate commerce. *Id.* Notably, Mr. Smith isn't the first defendant to attempt this challenge—defendants in other jurisdictions have raised this argument, but never successfully. *See, e.g.*, *United States v. Howald*, No. 21-04, 2023 WL 35049, at *5 (D. Mont. Jan. 4, 2023) ("Howald's facial and as-applied constitutional challenges to § 249(a)(2) fail."); *United States v. Genco*, 584 F. Supp. 3d 515, 540 (S.D. Ohio 2022) ("As Genco used the channels and instrumentalities of interstate commerce, the federal jurisdictional requirement is met as applied to his challenged conduct in this case."); *United States v. Mullet*, 868 F. Supp. 2d 618, 623 (N.D. Ohio 2012) ("[U]nder well-established case law, the Hate Crimes Prevention Act is constitutional on its face and as applied here."); *United States v. Jenkins*, 909 F. Supp.

---

[1] Most of the actual abuse appears to have been committed by Mr. Dinell; but, as is clear from the indictment, the government relies on *Pinkerton* liability for most of the substantive counts as to Mr. Smith.

2d 758, 772 (E.D. Ky. 2012) ("[T]he Hate Crime Prevention Act is constitutional on its face and as applied here." (citation omitted)). Like these courts, this Court concludes that Mr. Smith's constitutional challenge fails.

The HCPA contains a jurisdictional element that ensures that Mr. Smith's prosecution operates within the bounds of the Commerce Clause. And Mr. Smith "has not identified any case," nor has this Court found any such case, "in which a federal criminal statute including an interstate commerce jurisdictional element has been held to exceed Congress's authority under the Commerce Clause." *United States v. Hill*, 927 F.3d 188, 204 (4th Cir. 2019) (citation omitted). There is a good reason for the absence of any such authority: the statutory jurisdictional element, if met, necessarily means that Commerce Clause authority exists.

Consider the statute's text. Section 249(a)(2) makes it a crime for someone "in any circumstance described in subparagraph (B)" to willfully cause "bodily injury to any person … because of the actual or perceived … disability" of that person. 18 U.S.C. § 249(a)(2)(A). The circumstances described in subparagraph (B) constitute the jurisdictional element and include conduct in which "the defendant uses a channel, facility, or instrumentality of interstate or foreign commerce," conduct in which "the defendant employs a … weapon that has traveled in interstate or foreign commerce," and conduct that "otherwise affects interstate or foreign commerce." *Id.* § 249(a)(2)(B). The inclusion of this jurisdictional element is significant because it acts as a "fail safe" that ensures that the HCPA "sweeps no broader than the categories of activity that Congress is empowered to regulate under the Commerce Clause." *Jenkins*, 909 F. Supp. 2d at 772. That is, the HCPA only captures "situations involving channels, facilities, and instrumentalities in interstate commerce; people, places, and things in interstate commerce; conduct substantially affecting interstate commerce; and any other activity of interstate commerce, but without capturing any conduct beyond these categories." *Id.* at 771. Put simply, the

"statute requires the [g]overnment to allege and prove beyond a reasonable doubt a jurisdictional nexus, establishing an explicit connection between the prohibited conduct and interstate commerce." *Mullet*, 868 F. Supp. 2d at 623.

The consequence of this requirement is that the HCPA will be constitutional as applied to Mr. Smith if the government has pled sufficient facts in the indictment to satisfy the jurisdictional element for the substantive counts against Mr. Smith. *See Hill*, 927 F.3d at 208-09 ("[T]he Hate Crimes Act's interstate commerce element ensures that each prosecution under the Hate Crimes Act will bear the necessary relationship to commerce that renders the crime within Congress's purview."). A review of the indictment reveals that the government has done so.

Six counts (3, 4, 6, 9, 10, and 11) allege the use of a "dangerous weapon" or "other weapon" that has "traveled in interstate or foreign commerce." ECF 3, pp. 12-13, 15, 18-20. Those weapons include a liquid irritant (Counts 3, 6, 9, and 10), footwear (Count 4), and a compression stocking (Count 11). *Id.* The indictment alleges that each of those weapons had "traveled in interstate and foreign commerce in connection with" the offense conduct. *Id.* The remaining five counts (Counts 2, 5, 6, 7, and 8) allege that Mr. Smith and Mr. Dinell "used" cell phones "in connection with" the alleged assaults.[2] *Id.* at 5-10. A phone qualifies as "a facility or means of interstate commerce." *See, e.g.*, *United States v. Giordano*, 442 F.3d 30, 39-41 (2d Cir. 2006) (holding that the intrastate use of a cell phone constitutes the use of "a facility in interstate commerce."); *United States v. Watson*, 852 F. App'x 164, 168 (6th Cir. 2021) (holding that cell phones are instrumentalities of interstate commerce), *cert. denied*, 141 S. Ct. 2614 (2021). These allegations establish the jurisdictional elements

---

[2] The government presently describes that use as filming the alleged assaults "in real time on [Mr.] Dinell's phone" and Messrs. Smith and Dinell "communicat[ing] with each other about the assaults, in close proximity in time to the offenses." ECF 111, p. 19.

at Section 249(a)(2)(B)(ii) and (iii) of the HCPA and render the statute constitutional as applied to Mr. Smith.

In his reply brief, Mr. Smith pivots to a more pointed attack of the counts that depend on the use of cell phones to satisfy the jurisdictional element (the "phone-only" counts of 2, 5, 6, 7, and 8). ECF 114. He argues that the use of the phone alone "cannot serve as the jurisdictional hook here because that use … was not 'in connection with' the alleged conduct[.]" *Id.* at 3. Essentially, Mr. Smith is challenging the sufficiency of the government's evidence related to the jurisdictional element of these counts. But such a challenge is premature because Mr. Smith's challenge depends "on a consideration of facts" and "the facts proffered here may or may not be developed at trial[.]" *United States v. Hill*, 700 F. App'x 235, 237 (4th Cir. 2017); *see also United States v. Mason*, 993 F. Supp. 2d 1308, 1317 (D. Or. 2014) ("Although it might be unconstitutional to apply the HCPA to Mason if the weapon he used had not traveled in interstate or foreign commerce, or if he had not used any weapon at all, the factual determination of whether or not the weapon actually traveled in interstate or foreign commerce is for the jury." (citation omitted)).

To be clear, the fact that Mr. Smith's argument is premature doesn't let the government off the hook. At trial, the government will need to prove beyond a reasonable doubt that the jurisdictional element has been met as to each count. And the Court has some concerns about the phone-only counts because it is unclear how the government will prove that use of the phones was "in connection with" the offense conduct. It is just too early though for the Court to wade into this territory, especially since the Court is constrained at this stage to accept as true all the allegations in the indictment, and the specific trial evidence will be critical in deciding this issue.[3]

---

[3] For example, the content of any text messages and timing and context of any photos and videos sent or received on the phones will be important to establish that the phones were used "in connection with" the conduct, rather than simply adjacent to the conduct.

*United States v. Besmajian*, 910 F.23d 1153, 1154 (3d Cir. 1990). Therefore, any argument that the counts based on the use of a cell phone should be dismissed is better suited for a motion under Federal Rule of Criminal Procedure 29, after the government has presented its case at trial.

For these reasons, the Court will deny Mr. Smith's motion to dismiss based on his as-applied challenge to the constitutionality of the HCPA.

## II. Mr. Smith's challenges to the certification of federal prosecution under Section 249(b) fail.

Mr. Smith also argues that the certification of the federal prosecution under the HCPA was "erroneous," for both substantive and procedural reasons. ECF 106, pp. 13-17. Substantively, he claims that federal charges are "manifestly unnecessary" here given Mr. Smith's allegedly minor role. *Id.* at 15. Procedurally, he claims that the certification was improper because it was "abrupt" and "conclusory." *Id.* at 15-17. The Court disagrees.

Mr. Smith's substantive challenge to the certification fails because the Court cannot review whether the federal government is rightly involved here. *United States v. Bowers*, 495 F. Supp. 3d 362, 375 (W.D. Pa. 2020) (Ambrose, J.). The HCPA provides that "[n]o prosecution of any offense described in this subsection may be undertaken by the United States, except under the certification in writing of the Attorney General, or a designee" that one of four criteria are satisfied. 18 U.S.C. § 249(b)(1). Those four criteria are: (1) the State lacks jurisdiction; (2) the State has requested that the federal government assume jurisdiction; (3) the "verdict or sentence obtained pursuant to State charges left demonstratively unvindicated the Federal interest in eradicating bias-motivated violence"; and (4) a federal prosecution "is in the public interest and necessary to secure substantial justice." *Id.*

At least as it pertains to the fourth criterion—which is at issue here—the Court finds that it lacks the authority to engage in a substantive review of the certification.

As other courts have concluded, there are certain interpretive clues in discerning statutory intent in this context. For example, there is no statutory language here endorsing substantive judicial reviewability of the Attorney General's certification, which is arguably a signal that Congress didn't intend that review. *Bowers*, 495 F. Supp. 3d at 375. More importantly, Section 249 is also "devoid of … a standard of review under which such a review could be conducted." *Jenkins*, 909 F. Supp. 2d at 774. Indeed, neither side here has articulated to the Court what it even means "to secure substantial justice," and no statutes, regulations, or cases provide guidance on what looks like a highly discretionary concept. The lack of any definitions or articulable standards in the text likely means that "Congress intended that judicial review of the certification process should be precluded in favor of the broad discretion of federal prosecutors." *Id.* Since the Court "lack[s] the ability to engage in a substantive review of the [g]overnment's certification," it follows that Mr. Smith's challenge to the substantive merits of that certification decision necessarily fails. *Bowers*, 495 F. Supp. 3d at 375 (citation omitted); *see also United States v. Maybee*, No. 11-30006, 2013 WL 3930562, at *3 (W.D. Ark. July 30, 2013) (holding that substantive judicial review of certification under 18 U.S.C. § 249(b)(1) is "inappropriate").

Mr. Smith's procedural challenge also fails, but for a different reason. Unlike a substantive challenge, limited review is available for technical defects. *See Impounded*, 117 F.3d 730, 731 (3d Cir. 1997) (analyzing analogous statute and holding that "we have jurisdiction to review only limited aspects of the certification decision, including whether the certification is proper in form"). Mr. Smith claims that the certification here was defective because it was conclusory and did not provide him an opportunity to meaningfully evaluate whether it was made for improper purposes. Not so. The Attorney General certified this case for federal prosecution because it was "in the public interest" and "necessary to secure substantial justice."

ECF 106-1.  The certification "mirror[s] the language of the statute[]" and that's all that was needed.  *Bowers*, 495 F. Supp. 3d at 374.  The statute doesn't require the government to "show its work," as Mr. Smith suggests.  Instead, "once the claims are certified as 'in the public interest and necessary to secure substantial justice,' they remain so until the Government informs the Court otherwise."  *Id.*  There is no technical defect here.

The Court therefore denies Mr. Smith's motion to dismiss based on his challenges to the Attorney General's certification of prosecution.

\* \* \*

**AND NOW**, this 18th day of October, 2023, it is hereby **ORDERED** that Mr. Smith's motion to dismiss the indictment (ECF 106) is **DENIED**.

BY THE COURT

/s/ J. Nicholas Ranjan
United States District Judge